NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JILL MARIE KNOX, *Appellant.*

No. 1 CA-CR 22-0185
FILED 11-17-2022

---

Appeal from the Superior Court in Yavapai County
No. V1300CR202080343
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Law Offices of Stephen L. Duncan PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass joined.

---

**T H U M M A,** Judge:

¶1        Defendant Jill Marie Knox appeals her convictions for manslaughter, aggravated assault, criminal damage and aggravated driving while under the influence with a passenger under 15 years of age. Because she has shown no error, her convictions and sentences are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2        One afternoon in February 2020, Knox was driving in Yavapai County with her five-year-old daughter in the back seat. Her daughter was sitting in the middle seat, restrained only by the lap belt. Several witnesses saw Knox driving erratically, tailgating other vehicles and swerving in and out of her lane. At one point, she veered off the side of the road, swerved back into her lane, and crossed the double-line into oncoming traffic. Knox collided head-on with an oncoming vehicle. Knox did not apply her brakes before impact.

¶3        As a result of the crash, Knox' daughter sustained significant head injuries, later dying of blunt force brain trauma. The driver of the oncoming vehicle was severely injured, with an acute fracture to his leg requiring multiple corrective surgeries. His vehicle, valued at $5,000, "was completely totaled."

¶4        When questioned by officers, Knox admitted to smoking medical marijuana and taking a number of prescription drugs earlier that day. Knox said she began feeling tired before the crash "must have blacked out." She claimed to have restrained her daughter using only a lap belt because their dog vomited in her car seat. Although officers located a car seat in the vehicle, they did not recall seeing vomit on the seat.

**¶5**          Officers located prescription bottles, medical marijuana and pipes in Knox' vehicle. The labels on the prescription bottles specified that the drugs may cause drowsiness and the user should exercise care when operating a vehicle. Similarly, Knox' medical marijuana card stated that the drug could impair the user's ability to drive a vehicle.

**¶6**          An analysis of Knox' blood revealed the presence of carisoprodol, meprobamate, gabapentin and tetrahydrocannabinol (THC) in her system. A forensic scientist later testified these drugs, all of which have depressant-like effects, can impair a person's ability to drive. She further testified that the impact of the drugs when taken together would be "more enhanced than if there was just one of those drugs alone."

**¶7**          The State charged Knox with one count of manslaughter, a Class 2 felony and dangerous offense; aggravated assault, a Class 4 felony and dangerous offense; criminal damage, a Class 5 felony; and aggravated driving while under the influence with a passenger under 15 years of age, a Class 6 felony.[1] At trial, the State presented evidence from the forensic scientist, eyewitnesses, responding officers, firefighters and medical examiners. Knox unsuccessfully moved for a judgment of acquittal at the close of the State's case. *See* Ariz. R. Crim. P. 20(a) (2022).[2] Knox elected not to testify, as was her right. She did, however, call a number of witnesses including a physician assistant with knowledge of her prescription history.

**¶8**          The jury convicted Knox on all counts. The superior court sentenced Knox to an aggregate term of 13 years in prison. This court has jurisdiction over Knox' timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A).

## DISCUSSION

### I.     The Trial Evidence Was Sufficient to Support the Convictions.

**¶9**          Knox argues the superior court erred in denying her motion for judgment of acquittal, claiming the State failed to present sufficient evidence she committed manslaughter or acted recklessly. This court reviews de novo the denial of a motion for judgment of acquittal and the

---

[1] Before trial, the court dismissed another count of aggravated driving while under the influence with a passenger under 15 years of age, a Class 6 felony.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

sufficiency of the evidence to support a conviction. *See State v. Bible*, 175 Ariz. 549, 595 (1993).

¶10         A judgment of acquittal is appropriate only "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a). Substantial evidence is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419 (1980). "The sufficiency of the evidence must be tested against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505 ¶ 8 (App. 2005).

¶11         To prove Knox committed manslaughter, the evidence had to show she recklessly caused her daughter's death. *See* A.R.S. § 13-1103(A)(1). The State was also required to prove Knox acted recklessly in committing aggravated assault and criminal damage. *See* A.R.S. §§ 13-1203(A)(1) (assault), -1204(A)(3) (aggravated assault), -1602(A)(1) (criminal damage). A person acts recklessly when the person "is aware of and consciously disregards a substantial and unjustifiable risk." A.R.S. § 13-105(10)(c). This "risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id*.

¶12         The State presented evidence that Knox had multiple prescriptions drugs and THC in her system at the time of the crash. Each of these drugs alone could have impaired her ability to drive, and the effect of the drugs when combined enhanced that risk. The labels on the prescription bottles, and the disclaimer on her medical marijuana card, warned her of the risks associated with driving while using those drugs. The evidence established that Knox was driving erratically, she did not attempt to pull over, and she did not apply her brakes before colliding with the oncoming vehicle. Her daughter was not restrained in a car seat at the time of the crash, even though a functioning car seat was found in the vehicle. Thus, the State presented sufficient evidence that Knox was aware of and consciously disregarded the risk she posed to her minor daughter and all other vehicles on the roadway.

¶13         After viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, the superior court did not err in denying Knox' motion for judgment of acquittal.

## II. Admission of Gabapentin Testimony Was Not Error.

¶14 Knox challenges the admissibility of testimony concerning a toxicology report showing she had gabapentin in her system at the time of the crash. Knox argues that the State untimely disclosed the report and prevented her from hiring an expert witness to review and potentially refute the report's findings. The decision to preclude evidence because of untimely disclosure is within the discretion of the superior court. *See State v. Rienhardt*, 190 Ariz. 579, 586 (1997). This court will overrule the court's decision only if the defendant shows the delayed disclosure resulted in prejudice. *Id.*

¶15 Due process requires that the State timely disclose material evidence. *See State v. Gulbrandson*, 184 Ariz. 46, 63 (1995). One of the purposes of timely disclosure is to avoid undue delay and surprise. *See State v. Stewart*, 139 Ariz. 50, 59 (1984). The superior court has the authority to impose the appropriate sanction for a disclosure violation, and that sanction should be proportional to the degree of prejudice caused. *See* Ariz. R. Crim. P. 15.7; *State v. Ramos*, 239 Ariz. 501, 504 ¶ 9 (App. 2016). The factors to consider include the importance of the evidence, prejudice to the defense and whether the violation involved bad faith. *See State v. Towery*, 186 Ariz. 168, 186 (1996).

¶16 Early in the case, the State disclosed the initial toxicology report showing Knox had carisoprodol, meprobamate, and THC in her blood at the time of the collision. At that time, the instrument used to analyze blood could not test for gabapentin. Shortly before trial, the State learned that the forensic scientist could test for gabapentin using a new instrument obtained by the laboratory. The forensic scientist retested the blood and completed a second toxicology report showing gabapentin was present in Knox' system at the time of the collision. The State promptly disclosed the report to Knox.

¶17 On the first day of trial, Knox moved to preclude any mention of the second toxicology report, arguing the State's late disclosure impacted her ability to hire an expert witness and challenge the evidence. The State argued that Knox admitted to taking gabapentin on the date of the offenses and knew her use of the drug would be discussed at trial. The superior court denied the motion to preclude, and Knox did not request a continuance. At trial, officers testified that they located a bottle of gabapentin in Knox' vehicle and she admitted to taking the drug prior to the collision. The forensic scientist testified regarding the first and second toxicology reports, confirming that the laboratory's new instrument could screen for

gabapentin and the test revealed the presence of gabapentin in Knox' blood. Knox' physician assistant testified that she had been prescribed gabapentin as a pain medication and she did not appear to be abusing the drug.

**¶18** The delayed disclosure of the second toxicology report did not subject Knox to undue surprise. *See Stewart*, 139 Ariz. at 59. The State provided Knox with sufficient notice of which prescription drugs would be discussed at trial, including gabapentin. Based on Knox' admissions and the evidence located in her vehicle, she knew her gabapentin use would be relevant to the offenses and chose not to secure an expert witness to challenge that evidence. Upon learning the forensic scientist could test for gabapentin, the State requested, received and disclosed the results before trial. Knox did not ask for a continuance to investigate the issue. And finally, Knox was able to present testimony from her physician assistant regarding her prescribed, therapeutic use of the drug.

**¶19** Without any showing that the late disclosure resulted from bad faith on the State's part or that Knox suffered prejudice, there was no abuse of discretion in permitting the testimony.

### III. Admission of Medical Examiner Testimony Was Not Error.

**¶20** Knox further contends the superior court erred in allowing testimony from two medical examiners. She argues that the testimony was unfairly prejudicial and cumulative. Because she did not object to this testimony below, this court reviews only for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 142 ¶ 21 (2018).

**¶21** Relevant evidence is admissible unless "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Ariz. R. Evid. 401, 403. Not all harmful evidence results in unfair prejudice. *See State v. Shurz*, 176 Ariz. 46, 52 (1993). "After all, evidence which is relevant and material will generally be adverse to the opponent." *Id*. Although the details of a victim's cause of death tend to be tragic, such evidence is admissible unless presented "for the sole purpose of inflaming the jury." *State v. Gerlaugh*, 134 Ariz. 164, 169 (1983); *see also State v. Spreitz*, 190 Ariz. 129, 142 (1997) (noting the facts surrounding a victim's cause of death are always relevant in a homicide case). Moreover, evidence that provides "different perspectives" of what occurred is not considered needlessly cumulative. *State v. Escalante-Orozco*, 241 Ariz. 254, 279, ¶ 86 (2017), *abrogated on other grounds by Escalante*, 245 Ariz. at 140, ¶15.

**¶22** The State elicited testimony, without objection, from two medical examiners regarding injuries and cause of death. The first medical examiner, who conducted the autopsy, testified that Knox' daughter sustained numerous injuries to her torso, spinal cord, and brain. He testified that complications from blunt force injuries and blood loss to her brain caused her death. The second medical examiner, a neuropathologist, testified that she specifically examined injuries to her brain and spinal cord after the autopsy. She provided a more detailed cause of death, testifying that her "primary brain injury [was] the hypoxic-ischemic encephalopathy," which meant she was not receiving blood or oxygen to her brain resulting in cardiac arrest. The State did not admit any reports or photographs associated with the autopsy or post-autopsy examinations.

**¶23** As noted above, the State was required to prove the crash caused the death. *See* A.R.S. § 13-1103(A)(1). The testimony provided by the medical examiners was relevant to establish the cause of death, as well as the significant injuries she sustained. The first medical examiner was necessary in describing the results of the autopsy, and the second medical examiner provided an additional neuropathological diagnosis and more detailed cause of death. Although the witnesses both testified as to brain and spinal cord injuries, their testimony was necessary in fully explaining and contextualizing her cause of death. *See Rienhardt,* 190 Ariz. at 584 (finding no error where the admission of graphic "photographs of a murder victim are relevant if they help to illustrate what occurred"). The testimony was neither admitted for an improper purpose nor needlessly cumulative. *See* Ariz. R. Evid. 403. Knox has failed to establish error, fundamental or otherwise.

## CONCLUSION

**¶24** Knox' convictions and resulting sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA